COURT OF APPEALS
DECISION
DATED AND FILED

June 20, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.** 2022AP357-CR

Cir. Ct. No. 2019CF5378

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-APPELLANT,

  V.

TERRANCE WALTER GATES,

      DEFENDANT-RESPONDENT.

      APPEAL from an order of the circuit court for Milwaukee County: DANIELLE L. SHELTON, Judge. *Reversed and cause remanded*.

      Before Brash, C.J., Donald, P.J., and Dugan, J.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  The State of Wisconsin appeals an order of the circuit court granting Terrance Walter Gates's motion to suppress evidence.  Upon review, we reverse the circuit court and remand the matter for further proceedings.

**BACKGROUND**

¶2     On December 5, 2019, the State charged Gates with one count of being a felon in possession of a firearm.  According to the criminal complaint, Milwaukee police responded to "a report of subjects with firearms" at a Milwaukee residence.  While waiting for additional officers, police noticed a gray vehicle parked in front of the residence.  The vehicle pulled away after a few minutes and the officers followed.  After one block, the vehicle pulled over and the occupants immediately exited.  The passenger—Gates—initially walked away from the officers, but was ultimately stopped and searched.  When an officer felt a firearm on Gates, he fled, and the officers located a firearm in Gates's flight path.  Another officer who responded to the scene ultimately located Gates, who was subsequently arrested and charged.

¶3     Gates filed a motion to suppress, alleging that police violated his Fourth Amendment rights because they lacked reasonable, particularized suspicion to stop him and pat him down.

¶4     At a hearing on the motion, Milwaukee Police Officer Juan Medel testified that on December 4, 2019, he and his partner Officer Kyle Labensky were dispatched to a residence at 3:15 a.m. in response to a "gun complaint" from a caller who said that individuals were "carrying long guns," or "rifles, or shotguns, or any other weapons" at that address.  Medel testified that he knew that particular residence had frequent late-night "after set[s]," or parties after the bars closed.  Medel further testified that because the "nature of the call" involved "long guns,"

2

he and Labensky were dispatched as a backup squad. Medel stated that while waiting for the primary squad to arrive, he and Labensky saw a car without registration plates, parked in front of the residence, pull away. Medel stated that they decided to conduct a traffic stop, but before they could activate their squad lights, the car turned the corner and pulled over less than a block away. The driver and the passenger—Gates—got out of the car. Medel testified that because of concern for long guns, he and his partner approached the car to look for weapons. Medel stated that while the driver of the vehicle walked towards the officers, Gates initially walked away from vehicle after exiting. Medel stated that he found Gates's behavior suspicious because "he clearly saw us pull up behind him" and "now he's walking away from us," while the driver of the vehicle approached the officers and volunteered that he did not have any weapons on him. Medel stated that he asked Gates whether he had any weapons on him, explained why he was in the area, and asked if Medel could search him. Gates denied having a weapon and allowed Medel to frisk him. Medel stated that when he reached Gates's ankle, he felt a "bulge," at which point Gates took off running. Officers recovered a firearm from Gates's flight path and Gates was ultimately apprehended.

¶5    Labensky testified that he and Medel were dispatched to the residence after a call that multiple subjects were coming and going from the residence with firearms. Labensky testified consistent with Medel, and stated that he and Medel planned to conduct a traffic stop based upon the vehicle's lack of registration, but did not have an opportunity to do so because the vehicle pulled over right away. Labensky testified that the officers decided to conduct a field interview when the driver and Gates exited the vehicle. Labensky stated that he immediately explained the officers' presence and asked the driver if he could conduct a pat down. Labensky stated that the driver was cooperative and while conducting the pat-down, he heard

Medel shout that Gates had a gun. Labensky further testified that Gates then fled on foot.

¶6 The circuit court found the officers' testimony credible and initially denied Gates's motion to suppress the firearm, but ordered additional briefing addressing whether "the frisk" was "reasonable . . . under the circumstances" before deciding whether to suppress the officers' statements. Following additional briefing, the circuit court issued a written order suppressing both the gun and the officers' testimony. Relying on *Florida v. J.L.*, 529 U.S. 266 (2000), the circuit court found that the State had not met its burden to show that Medel had reasonable suspicion for the investigatory stop and protective frisk of Gates. Later, the circuit court held an additional hearing in which it made a supplemental "Oral Ruling" to "clarify the record." The circuit court then discussed *California v. Hodari D.*, 499 U.S. 621 (1991), and found that the seizure "occurred without reasonable suspicion." The circuit court then granted the "motion to suppress anything that was discovered after the seizure." This appeal follows.

## DISCUSSION

¶7 On appeal, the State argues that the circuit court erroneously granted Gates's motion to suppress. We review a circuit court's decision on a motion to suppress evidence using a two-step standard. *See State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. We will uphold the circuit court's findings of fact unless they are clearly erroneous, and we review independently the application of the facts to the constitutional principles. *See id.* "A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

4

¶8 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect an individual's right to be free from unreasonable searches and seizures. *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729. However, police may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The Fourth Amendment's protections require that police have more than an "inchoate and unparticularized suspicion or 'hunch[.]'" *Terry*, 392 U.S. at 27. "[W]hat constitutes reasonable suspicion is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience." *State v. Young*, 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997).

¶9 The State asserts that under the totality of the circumstances, the investigatory stop was reasonable and that the officers had the authority to extend the stop after Gates fled. The State further contends that the circuit court's amended decision ignored pertinent facts and that the circuit court misapplied the law related to investigatory stops and protective frisks. We agree.

¶10 In rendering its ultimate decision, the circuit court found that the officers had reasonable suspicion and "the ability to stop [the] car" based on the lack of proper registration plates, but found that the officers lacked the reasonable suspicion to stop and frisk Gates. Because the car pulled over and the driver and Gates got out before officers activated their lights, the officers did not make a traffic stop; instead, they decided to conduct a field interview based upon the 911 call and the occupants' behavior. As Gates walked away from the officers, Medel approached him, explained his presence, and asked Gates if he could pat him down

for weapons. Gates complied, but when Medel felt the gun under Gates' sock, Gates fled. Accordingly, we agree with the State that Gates was seized when Medel conducted the investigatory *Terry* stop by ordering Gates to stop for temporary questioning and conducting a protective frisk for weapons. *Terry*, 392 U.S. at 21-24, 30. Our inquiry, therefore, is whether Medel had reasonable suspicion that Gates was committing a crime before the seizure based on the totality of circumstances. We conclude that he did.

¶11 At the suppression hearing, the circuit court found both officers credible and made multiple findings of fact to initially deny Gates's motion to suppress the gun. However, the circuit court's subsequent written decision omitted many of its initial factual findings. Relying on *J.L.*, the circuit court found that the officers relied only on an anonymous 911 call when they stopped and seized Gates. The record does not support the circuit court's finding that the officers solely, or even primarily, relied upon the 911 call. Rather, we conclude that the facts of this case are more akin to those of *State v. Nimmer*, 2022 WI 47, 402 Wis. 2d 416, 975 N.W.2d 598, where the supreme court relied on the totality of the circumstances to conclude that officers had reasonable suspicion to stop and seize Nimmer. *Id.*, ¶3. There, officers on patrol arrived at an address within about a minute of receiving a ShotSpotter report that shots had been fired at that location. *Id.*, ¶27. When they arrived at the address provided, only one person, Nimmer, was outside the address. *Id.* When Nimmer saw the officers, he speedily tried to walk away from them and began moving strangely. *Id.*, ¶34. Police suspected that Nimmer was trying to conceal something. *Id.*, ¶37. Relying on all of the facts available to the officers at the time of the stop, our supreme court concluded that reasonable suspicion supported the stop. *Id.*, ¶37.

¶12 Like in *Nimmer*, the facts taken together support the officers' reasonable suspicion to stop and detain Gates. Indeed, the circuit court even found as much at the suppression hearing, but later amended its decision when it omitted most of its initial factual findings. While the officers responded to a 911 call regarding firearms, the officers initially followed Gates because of a traffic law violation. The driver of the vehicle pulled over after one block, and both occupants immediately exited the car and headed in different directions. The officers found Gates's behavior particularly suspicious because the driver of the vehicle approached the officers and offered that he had "nothing" on him, while Gates attempted to avoid the officers. Based on the totality of these circumstances, the officers' reasonable suspicion that Gates was committing a crime and was likely armed resulted not solely from the anonymous 911 call; rather, it evolved from Gates' increasingly suspicious behavior, in conjunction with the officers' safety concerns based on the location, the late hour, and the dimly lit scene.

¶13 We also agree with the State that the circuit court erroneously relied on *Hodari D.* when it found that that "the police lacked reasonable suspicion for an investigative stop" because officers could not consider Gates's flight as part of the "reasonable suspicion calculus." The facts of that case are distinguishable from the case at bar. In *Hodari D.*, the Supreme Court explained that a fleeing suspect who did not acquiesce to officers was not seized until he was apprehended and submitted to police authority. *Id.*, 499 U.S. at 629. Here, however, Medel lawfully seized Gates *before* Gates fled. Indeed, Medel explained his presence, asked Gates if he could frisk him, and Gates agreed. The seizure, as stated, was based on reasonable suspicion under the totality of the circumstances. As noted, based on the totality of these circumstances, the officers' reasonable suspicion that Gates was committing a crime and was likely armed evolved from Gates' increasingly suspicious behavior,

in conjunction with the officers' safety concerns based on the location, the late hour, and the dimly lit scene.

¶14     For the foregoing reasons, we agree with the State that the circuit court erred both legally and factually when it granted suppression of the officers' testimony and the gun.  We reverse the order granting suppression and remand the matter for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.